**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

```
--------------------------------------------------------------- X
RIGOBERTO ANDUX MIRABAL, GABRIEL         |
CANO ARANGO, YOAN AQUINO                 |
MARTINEZ, LUCAS PEDRONZO TOLEDO,         |
JULIO CESAR OCHOA, NELSON BATISTA        |   Civil Action
CORBO, WILLIAM RICARDO ANTUNEZ           |
VALDEZ, and THE ESTATE OF CARLOS         |
ALBERTO on behalf of themselves and all others  |   Case No.: 19-cv-16608-MCA-ESK
similarly situated who were employed by  |
Caribbean Car Wash, Inc.                 |
                                         |
                     Plaintiffs,         |
        - against -                      |
                                         |
                                         |
CARIBBEAN CAR WASH, INC., ULPIANO        |
RODRIGUEZ, ROBERTO RODRIGUEZ, and        |
OMAR RODRIGUEZ,                          |
                                         |
                     Defendants,         |
                                         |
--------------------------------------------------------------- X
```

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR**
**MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND**
**CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS AND COLLECTIVE**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

FACTUAL BACKGROUND .......................................................................................... 2

PROPOSED SETTLEMENT TERMS ............................................................................ 4

ARGUMENT ................................................................................................................ 5

   I.    THE COURT SHOULD CONDITIONALLY CERTIFY THE CLASS FOR
SETTLEMENT PURPOSES ..................................................................................... 5

      A)   THE PROPOSED SETTLEMENT CLASS MEETS THE "NUMEROSITY"
REQUIREMENT OF RULE 23(A)(1) ........................................................................ 6
      B)   THE PROPOSED SETTLEMENT CLASS MEETS THE "COMMONALITY"
REQUIREMENT OF RULE 23(A)(2) ........................................................................ 6
      C)   THE PROPOSED SETTLEMENT CLASS MEETS THE "TYPICALITY"
REQUIREMENT OF RULE 23(A)(3) ........................................................................ 7
      D)   THE PROPOSED SETTLEMENT CLASS MEETS THE "ADEQUACY"
REQUIREMENT OF RULE 23(A)(4) ........................................................................ 8
      E)   THE PROPOSED SETTLEMENT CLASS MEETS THE "PREDOMINANCE"
AND "SUPERIORITY" REQUIREMENTS OF RULE 23(B)(3) .................................. 10

   II.   THE COURT SHOULD GRANT FINAL CERTIFICATION OF THE FLSA
COLLECTIVE FOR SETTLEMENT PURPOSES ............................................................ 12

   III.   PRELIMINARY APPROVAL OF THE SETTLEMENT AGREEMENT IS
APPROPRIATE .......................................................................................................... 13

   IV.   THE COURT SHOULD APPROVE THE PROPOSED SETTLEMENT UNDER
THE FLSA ................................................................................................................ 17

   V.   THE COURT SHOULD PRELIMINARILY APPROVE CLASS COUNSEL'S
FEES AND COSTS REQUEST .................................................................................... 18

   VI.   THE COURT SHOULD APPROVE THE PROPOSED FORM OF NOTICE
AND NOTICE PLAN .................................................................................................. 20

   VII.   THE COURT SHOULD APPOINT SETTLEMENT SERVICES, INC. AS THE
SETTLEMENT ADMINISTRATOR AND AWARD THE SETTLEMENT
ADMINISTRATOR ITS COSTS AND FEES ................................................................ 22

CONCLUSION ............................................................................................................ 23

## Table of Authorities

### Cases

*Aboud v. City of Wildwood*, No. CIV. 12-7195 JS, 2013 WL 2156248 (D.N.J. May 17, 2013).. 22

*Alfaro v. First Advantage Lns Screening Sols., Inc.*, 2017 WL 3567974 (D.N.J. Aug. 16, 2017) 9, 11

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997) ................................................................ 5, 11

*Atis v. Freedom Mortg. Corp.*, 2018 WL 5801544 (D.N.J. Nov. 6, 2018)................................... 12

*Barnes v. Am. Tobacco Co.*, 161 F.3d 127 (3d Cir. 1998)........................................................ 10

*Beck v. Maximus, Inc.*, 457 F.3d 291 (3d Cir. Pa. 2006) ............................................................. 8

*Bernhard v. TD Bank*, 2009 WL 3233541 (D.N.J. Oct. 5, 2009) ................................................. 22

*Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745 (D.N.J. Apr. 8, 2011) .......... 12, 17, 18, 19

*Chemi v. Champion Mortg.*, 2009 WL 1470429 (D.N.J. May 26, 2009) ...................................... 18

*Churchill Village, LLC v. Gen. Elec. Co.*, 361 F.3d 566 (9th Cir. 2004) ...................................... 13

*Ehrheart v. Verizon Wireless*, 609 F.3d 590 (3d Cir. 2010) .................................................. 5, 13

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)................................................................... 22

*Farris v. J.C. Penney Co.*, 176 F.3d 706 (3d Cir. 1999)............................................................. 17

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975)............................................................................ 13

*Gutierrez v. Tryax Realty Mgmt., Inc.*, No. 17 CIV. 6752 (PAE), 2020 WL 777190 (S.D.N.Y. Feb. 18, 2020) ...................................................................................................................... 9

*Hall v. Best Buy Co.*, 274 F.R.D. 154 (E.D. Pa. 2011) ............................................................... 12

*Hilaire v. Underwest Westside Operating Corp.*, No. 19-CV-3169 (PAE) (RWL), 2020 WL 774133 (S.D.N.Y. Feb. 17, 2020) .............................................................................................. 9

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164 (S.D.N.Y. 2000)............... 5

*In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001)........................................................... 19

*In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.*, 795 F.3d 380 (3d Cir. 2015) ........... 7

*In re Cmty. Bank of N. Virginia*, 418 F.3d 277 (3d Cir. 2005).................................................... 8

*In re Diet Drugs Prod. Liab. Litig.*, 369 F.3d 293 (3d Cir. 2004) ............................................... 20

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995)................ 8

*In re Janney Montgomery Scott LLC Fin. Consultant Litig.*, 2009 WL 2137224 (E.D. Pa. July 16, 2009) ....................................................................................................................................... 18

*In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*, 2013 WL 396117 (D.N.J. Jan. 30, 2013) ................................................................................................................................ 7, 9, 11

*In re Prudential Ins. Co. of Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998) ...................................................................................................................................................... 7

In re Safety Components, Inc. Sec. Litig., 166 F Supp. 2d 72 (D.N.J. 2001)............................... 19

*In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525 (E.D. Pa. 1990)........................ 19

*In re Thalomid & Revlimid Antitrust Litig.*, No. CV146997 (MCA) (MAH), 2020 WL 4197092 (D.N.J. May 26, 2020) ............................................................................................................ 14

*In re Traffic Executive Ass'n -- Eastern Railroads*, 627 F.2d 631 (2d Cir. 1980)..................... 15

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004)........................................... 13

*Johnston v. HBO Film Mgmt.*, 265 F.3d 178 (3d Cir. 2001) ....................................................... 8

*Lawson v. AT&T Mobility, LLC*, 687 F.3d 109 (3d Cir. 2012);.................................................... 22

*Lenahan v. Sears, Roebuck & Co.*, 2006 WL 2085282 (D.N.J. July 24, 2006) ........................... 18

*Lora v. J. V. Car Wash, LTC.*, No. 11 CIV. 9010 LLS AJP, 2015 WL 4496847 (S.D.N.Y. July 24, 2015) ...................................................................................................................................... 8

*Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987) ............................................................ 12

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982) ............................. 17

*Marcus v. BMW of N. Am.*, LLC, 687 F. 3d 583 (3d Cir. 2012) .................................................. 6

*Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072 (2d Cir. 1998) ............................. 13

*Mirabal v. Caribbean Car Wash, Inc.*, No. 19-CV-16608-MCA-ESK, 2020 WL 5939780
   (D.N.J. Oct. 7, 2020) .............................................................................................................. 13

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154 (3d Cir. 2001) ................. 8

*Ripley v. Sunoco, Inc.*, 287 F.R.D. 300 (E.D. Pa. 2012) ............................................................. 6

*Sandoval, et al. v. Galaxy General Contracting Corp., et al.*, No. 10-CV-5771 (PGG) (S.D.N.Y.)
   ................................................................................................................................................ 9

*Sawadogo v. Zap Lube & Car Wash, Inc.*, No. CV 20-1196(SDW)(LDW), 2020 WL 6689826
   (D.N.J. Nov. 13, 2020) .............................................................................................................. 9

*See, e.g. In re High-Tech Emp. Antitrust Litig.*, 2013 WL 6328811 (N.D. Cal. Oct. 30, 2013) ... 23

*Shapiro v. All. MMA, Inc.*, 2018 WL 3158812 (D.N.J. June 28, 2018) ....................................... 14

*Singleton v. First Student Mgmt. LLC*, 2014 WL 3865853 (D.N.J. Aug. 6, 2014) ..................... 16

*Smith v. Merck & Co.*, 2019 WL 3281609 (D.N.J. July 19, 2019) .............................................. 10

*Stewart v. Abraham*, 275 F. 3d 220 (3d Cir. 2001) ..................................................................... 6

*Szczubelek v. Cendant Mortg. Corp.*, 215 F.R.D. 107 (D.N.J. 2003) ......................................... 6

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 136 S. Ct. 1036, (2016) ................................ 10

*Udeen v. Subaru of Am., Inc.*, 2019 WL 4894568 (D.N.J. Oct. 4, 2019) ............................. 14, 16

*Wal-Mart Stores v. Dukes*, 131 S. Ct. 2541 (2011) ..................................................................... 5

## Statutes

29 U.S.C. 201, *et seq.* (Fair Labor Standards Act) ...................................................................... 1

N.J.S.A. 34:11-56a, *et seq.* (New Jersey Wage and Hour Law) ........................................ 4, 16, 17

## Rules

Fed. R. Civ. P. 23 ............................................................................................................... passim

## Treatises

Rubinstein, Newberg on Class Actions ............................................................................... 14, 20

## INTRODUCTION

We represent Plaintiffs Rigoberto Andux Mirabal ("Mirabal"), Gabriel Cano Arango ("Arango"), Yoan Aquino Martinez ("Martinez"), Lucas Alberto Pedronzo Toledo ("Toledo"), Julio Cesar Ochoa ("Ochoa"), Nelson Batista Corbo ("Corbo"), William Ricardo Antunez Valdez ("Valdez"), and the Estate of Carlos Alberto ("Alberto") (collectively the "Named Plaintiffs") and a putative class and collective in the above-captioned class and collective action.

This action arises from the alleged failure of Defendants Caribbean Car Wash, Inc. ("CCW"), Ulpiano Rodriguez ("Ulpiano"), Roberto Rodriguez ("Roberto"), and Omar Rodriguez ("Omar"), (collectively "Defendants"), to pay, and failure to ensure payment to Named Plaintiffs and the other members of the putative class, wages, including but not limited to minimum wage and overtime compensation, for work they performed on behalf of Defendants.

Subject to this Court's approval, the parties have reached a settlement of this collective and class action in which Defendants, while denying liability and disputing damages, have agreed to pay $1,000,000 to settle all claims in this action. The Named Plaintiffs submit this motion respectfully requesting that this Court: (1) conditionally certify a settlement class for all claims under Federal Rule of Civil Procedure 23(a) & (b)(3); (2) grant final certification of the FLSA collective for settlement purposes; (3) grant preliminary approval of the settlement of the Rule 23 class claims; (4) approve the settlement of the FLSA claims; (5) approve the Notice of Proposed Class Action Settlement ("Notice"); (6) appoint Arenson, Dittmar & Karban as class counsel; (7) appoint Named Plaintiffs Mirabal, Arango, Martinez, Toledo, Ochoa, Corbo, and Valdez as Class Representatives; and (8) appoint Settlement Services, Inc. as the claims administrator.

Preliminary approval of a class settlement, as Plaintiffs seek here, does not require the Court to rule on the ultimate fairness of a settlement, but to make only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. In the interest of judicial economy, and as the proposed settlement is fair, reasonable, and adequate, Named Plaintiffs respectfully request that the Court grant this motion.

## **FACTUAL BACKGROUND**

On August 13, 2019, Named Plaintiffs filed this collection and class action lawsuit against Defendants. (ECF Doc. No. 1). Defendants employed the Named Plaintiffs and other members of the putative class and collective (collectively, "Plaintiffs") to perform non-managerial work related to Defendants' operation of a car wash. Named Plaintiffs allege that Defendants failed to provide Plaintiffs any explanation regarding their tips, unlawfully retained portions of their tips, and failed to pay Plaintiffs the proper minimum wage for each hour worked and the proper overtime compensation at the rate of one and one-half times the regular rate for work in excess of forty (40) hours per workweek. In addition to the eight Named Plaintiffs, fourteen[1] additional similarly situated employees of Defendants have filed consent to join forms in this action to date. (*See* Filed Consent to Join Forms, ECF Nos. 4, 5, 12, 17, 25–27.)

For purposes of the proposed settlement, both the class and the collective (together, the "Class") are defined as:

> All current and former non-exempt employees of Caribbean Car Wash, Inc. for the period August 13, 2013 through December 31, 2019. (Managers, supervisors, officers, executives, managerial or administrative personnel are not part of this group.)

---

[1] Plaintiffs' previous assertion that there were an additional fifteen "opt-in" plaintiffs was mistaken. Plaintiffs simply miscounted.

The Parties have exchanged, reviewed, and analyzed numerous documents and have engaged in motion practice. Class counsel have conducted extensive investigation into the facts and legal issues associated with this litigation. This included numerous interviews through the help of Spanish translators with the Named Plaintiffs and each opt-in Plaintiff, review of the numerous documents produced, analysis of all applicable laws and recent amendments to such, and extensive spreadsheet calculations analyzing each individual claim. (May 21, 2021 Declaration of Avi Mermelstein ("Mermelstein Dec.") ¶ 6.) Following the exchange of initial disclosures, the Parties exchanged document demands and interrogatories. Plaintiffs' counsel requested, among other things, time and pay records for Named Plaintiffs, Opt-In Plaintiffs, and other Class Members. Defendants' counsel submitted twelve sets of interrogatories, one set for each Named Plaintiff and a set for several Opt-In Plaintiffs, as well. The Parties then substantially completed and submitted responses to each other's requests. (Mermelstein Dec. ¶ 10.)

The Parties have reached a settlement subject to the Court's approval. After extensive discovery, analysis, and deliberation, the Parties believe that the Settlement described in the Joint Stipulation of Settlement and Release ("Settlement Agreement" or "SA") submitted herewith is fair, reasonable, and adequate. The Parties believe that the settlement serves the best interest of the Class based on all the facts and circumstances, including the risk of significant delay and the uncertainty of class certification. In reaching this conclusion, Class Counsel has considered, among other things, the risks of litigation, the time necessary to achieve a final resolution through trial and any appeals, the complexity of Plaintiffs' claims, and the benefits accruing to the Class under the Settlement. The settlement of this action will avoid the substantial expense,

inconvenience, and risk of continued litigation. Accordingly, Plaintiffs now seek preliminary approval of the Settlement.

## Proposed Settlement Terms

The Settlement Agreement provides that Defendants shall pay a fixed settlement of One Million Dollars ($1,000,000) ("Settlement Fund"), to be distributed on a pro rata basis to members of the Class, net of professional fees, costs, and administrative expenses depending on the size of the Class Member's claim. Per Section 3.1 of the Settlement Agreement, individual claims will be calculated as the sum of the following:

A. Minimum wage claims: for each work week during the Relevant Period in which the Individual Claimant worked for Defendants and was paid an hourly rate less than the minimum wage: (1) compute the total hours worked; (2) multiply by the difference between the NJWHL Minimum Wage applicable at the time and the hourly rate; (3) multiply the amount derived in (2) by three to account for 200% NJWHL liquidated damages.

B. Overtime claims: for each work week during the Relevant Period in which the Individual Claimant worked for Defendants more than 40 hours: (1) compute the total overtime hours worked by subtracting 40 from the total hours worked; (2) multiply by half the NJWHL Regular Rate; (3) multiply the amount derived in (2) by three to account for 200% NJWHL liquidated damages.

At the Fairness Hearing, Class Counsel will petition the Court for an award of attorneys' fees not to exceed Three Hundred Thirty-Three Thousand Dollars and Thirty-Three cents ($333,333.33), and for costs (including reimbursement of Class Counsel's actual expenses in this

Litigation and the fees and costs of the Administrator) not to exceed Eighteen Thousand Dollars ($18,000.00). These professional fees and costs shall be paid from the Settlement Fund. Section 3.2 of the Settlement Agreement provides that the outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not increase the amount of the Settlement Fund, terminate the Settlement Agreement or otherwise affect the Court's final approval of the Settlement Agreement. Any fees or costs sought by Class Counsel but not approved by the Court shall revert to the Settlement Fund.

In exchange for Defendants' payments and other obligations under the Settlement Agreement, Class Members will release Defendants for wage-and-hour claims. However, only Class Members who opt-in to the FLSA collective by submitting signed Claim Forms will release claims under the FLSA. (*See* SA § 4.1.7)

## ARGUMENT

### I.   THE COURT SHOULD CONDITIONALLY CERTIFY THE CLASS FOR SETTLEMENT PURPOSES

Prior to granting preliminary approval of a settlement, district courts determine whether the proposed settlement class is a proper class for settlement purposes. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997). The Court may certify a class where plaintiffs demonstrate that they meet the prerequisites of Rule 23(a) - numerosity, commonality, typicality and adequacy of representation - and one of the three requirements of Rule 23(b). Fed. R. Civ. P. 23; *See Wal-Mart Stores v. Dukes*, 131 S. Ct. 2541, 2548 (2011).

By reaching a favorable settlement prior to dispositive motions or trial, parties to class action litigation avoid significant expense and delay, and instead ensure recovery for the class. *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-595 (3d Cir. 2010) ("[T]he parties may also

gain significantly from avoiding the costs and risks of a lengthy and complex trial."); *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), aff'd sub. nom. D'Amato v. Deutsche Bank, 236 F.3d 78 (2d Cir. 2001) ("Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them.").

As set forth below, the settlement class here meets the requirements of Rule 23(a) & (b)(3) and, accordingly, should be provisionally certified by the Court for purposes of settlement.

> **a)     The Proposed Settlement Class Meets the "Numerosity" Requirement of Rule 23(a)(1)**

Rule 23(a)(1) requires the class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Courts in the Third Circuit typically hold that a putative class of about 40 is sufficient to meet this requirement. *See, e.g., Ripley v. Sunoco, Inc.*, 287 F.R.D. 300, 307 (E.D. Pa. 2012); *see also Marcus v. BMW of N. Am.*, LLC, 687 F. 3d 583, 595 (3d Cir. 2012) (citing *Stewart v. Abraham*, 275 F. 3d 220, 226-227 (3d Cir. 2001)). "Additionally, it is not necessary to demonstrate the precise number of class members when a reasonable estimate can be inferred from facts in the record." *Szczubelek v. Cendant Mortg. Corp.*, 215 F.R.D. 107, 116 (D.N.J. 2003).

Here, the proposed class is estimated to include at least 60 members, including 22 that have already filed consent to join forms and opted-into this action. (Martinez Dec. ¶ 10; Mirabal Dec. ¶ 10; Ochoa Dec. ¶ 11; Mermelstein Dec. ¶ 19.) Accordingly, as the proposed class is estimated to include well above the minimum of 40 generally required, numerosity is satisfied.

> **b)     The Proposed Settlement Class Meets the "Commonality" Requirement of Rule 23(a)(2)**

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality bar "is not high": Class members need not suffer actual injury, have identical claims, or even have viable claims—"the focus of the commonality inquiry is not on the strength of each class member's claims but instead on whether the defendant's conduct was common as to all of the class members." *In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.*, 795 F.3d 380, 397 (3d Cir. 2015) (internal quotation marks omitted). Thus, a single common issue will suffice. *In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*, 2013 WL 396117, at *4 (D.N.J. Jan. 30, 2013).

Here, there are several questions of law and fact that are common to the class; specifically, (1) whether Defendants unlawfully retained tips earned by the proposed class; (2) whether Defendants unlawfully paid the proposed class below the minimum wage; and (3) whether Defendants failed to provide overtime compensation to the proposed class for hours worked in excess of forty (40) in a workweek. "[R]esolving the merits of [Plaintiffs'] claims will depend upon common answers to legal and factual questions." *In re Merck*, 2013 WL 396117, at *5. Accordingly, the "commonality" requirement is met.

### c) The Proposed Settlement Class Meets the "Typicality" Requirement of Rule 23(a)(3)

Rule 23(a)(3) requires that "the claims or defenses of the representative parties" be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The "typicality" requirement is "designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." *In re Prudential Ins. Co. of Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 311 (3d Cir. 1998). The cause of the injury claimed on behalf of the class must be a result of some alleged "common

wrong." *Id.* at 312. Named Plaintiffs' claims are typical where each class member's claims arise from the same course of events and each class member makes similar arguments to prove the defendant's liability. *See Prudential*, 148 F.3d at 311; *see also Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 182 (3d Cir. 2001), as amended (Oct. 16, 2001)

Here, the claims of the proposed class representatives and class members both arise from the same alleged failure of Defendants, to pay minimum wage and overtime to its employees. Thus, the "typicality" requirement is met.

### d)      The Proposed Settlement Class Meets the "Adequacy" Requirement of Rule 23(a)(4)

Rule 23(a)(4) requires "the representative parties" to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement "encompasses two distinct inquiries designed to protect the interests of absentee class members: 'it considers whether the named plaintiffs' interests are sufficiently aligned with the absentees', and it tests the qualifications of the counsel to represent the class.'" *In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 303 (3d Cir. 2005) (citing *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995)). *Accord, e.g., Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. Pa. 2006); *Johnston v. HBO Film Mgmt.*, 265 F.3d 178, 185 (3d Cir. 2001); *Ripley*, 287 F.R.D. at 309.

The Class Representatives and Class Counsel have actively and intensively investigated and prosecuted this case. Throughout the pendency of this action, the Class Representatives have adequately and vigorously represented their fellow employees. They have spent significant time assisting their counsel and providing information regarding Caribbean's policies and practices. Mermelstein Dec. ¶ 31. Class Counsel is a highly experienced employment law firm and has

substantial experience litigating complex wage and hour collective and class actions. (Mermelstein Dec. ¶ 30; *see also Lora v. J. V. Car Wash, LTC.*, No. 11 CIV. 9010 LLS AJP, 2015 WL 4496847, at \*6 (S.D.N.Y. July 24, 2015), *report and recommendation adopted sub nom. Lora v. J.V. Car Wash, Ltd.*, No. 11CIV9010LLSAJP, 2015 WL 7302755 (S.D.N.Y. Nov. 18, 2015) ("Plaintiffs' counsel [Arenson, Dittmar & Karban] are highly experienced, in general and as employment litigators. Arenson, a graduate of Columbia Law School, has practiced for twenty-eight years. For the past twenty years, his practice has 'focused almost exclusively' on litigating employment cases, including numerous wage and hour disputes"); *Hilaire v. Underwest Westside Operating Corp.*, No. 19-CV-3169 (PAE) (RWL), 2020 WL 774133 (S.D.N.Y. Feb. 17, 2020); *Sawadogo v. Zap Lube & Car Wash, Inc.*, No. CV 20-1196(SDW)(LDW), 2020 WL 6689826 (D.N.J. Nov. 13, 2020); *Gutierrez v. Tryax Realty Mgmt., Inc.*, No. 17 CIV. 6752 (PAE), 2020 WL 777190 (S.D.N.Y. Feb. 18, 2020); *Sandoval, et al. v. Galaxy General Contracting Corp., et al.*, No. 10-CV-5771 (PGG) (S.D.N.Y.).

Thus, Class Counsel is "qualified, experienced and generally able to conduct the proposed litigation." *In re Merck*, 2013 WL 396117, at \*8 (citation omitted). "The burden to prove that the representation is not adequate rests with the party challenging the class' representation." *Alfaro v. First Advantage Lns Screening Sols., Inc.*, 2017 WL 3567974, at \*3 (D.N.J. Aug. 16, 2017) (internal quotation marks omitted). There is no sign of "conflict or antagonism" between Plaintiffs and the class members and no other indication of an adequacy problem. *Id*. at \*4 (internal quotation marks omitted). (Mermelstein Dec. ¶¶ 32–33.)

Accordingly, the "adequacy" requirement is met.

**e)** **The Proposed Settlement Class Meets the "Predominance" and "Superiority" Requirements of Rule 23(b)(3)**

Once the requirements of Rule 23(a) are satisfied, a class may be certified if the class fits within one of the three categories of class actions set forth in Rule 23(b). Here, Plaintiffs seek class certification under Rule 23(b)(3) which requires that the common questions of law or fact "predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

### i.   Common Questions Predominate

As the Supreme Court has stated:

> "The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. This calls upon courts to give careful scrutiny to the relation between common and individual questions in a case. An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof. The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues. When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453–54, 136 S. Ct. 1036, 1045, (2016) (internal citations and quotation marks omitted). "Rule 23(b)(3) class actions need not be as cohesive as Rule 23(b)(2) class actions because Rule 23(b)(3) class members have an opportunity to opt out." *Smith v. Merck & Co.*, 2019 WL 3281609, at *3 (D.N.J. July 19, 2019) (citing *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 142-43 (3d Cir. 1998)).

As set forth above in Section I.B., the common questions applicable to all class members here are: (1) whether Defendants unlawfully retained tips earned by proposed class; (2) whether

Defendants unlawfully paid the proposed class below the minimum wage; and (3) whether Defendants failed to provide overtime compensation to the proposed class for hours worked in excess of forty (40) in a workweek. These common questions predominate over any potential individual issues in this action. These common questions are central to this action, applying to all class members equally and in determining the Defendants' liability. The only individual question present here is the amount of damages each employee is owed; however, this question shall be answered by a common formula applicable to all class members, based on variables that will be determined on a common basis. Thus, to prove class liability, Plaintiffs "would have to focus on Defendant's conduct rather than on any individual factual differences in the class members' conduct." *Alfaro*, 2017 WL 3567974, at *3. Accordingly, the "predominance" requirement is met.

### ii.    Class Settlement is Superior to Alternative Methods of Adjudication

The "superiority" requirement of Rule 23(b)(3) analyzes whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). It "asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *Prudential*, 148 F.3d at 316 (internal quotation marks omitted). Here, Plaintiffs are low-wage immigrant workers with limited financial resources with which to bring individual actions. Concentrating the litigation in this Court is desirable as the alleged wrongful conduct occurred within this jurisdiction. Class treatment here avoids the "enormous inefficienc[ies] that individual actions would create" by avoiding the "the needless waste of both private and judicial resources" created by pursuing these claims "through individual actions that would involve similar if not identical evidence and certainly identical legal theories." *In re Merck*, 2013 WL

396117, at *13. It also ensures that litigation costs and burdens will not force class members to forfeit their claims and be left without relief. *See id*.

Lastly, the manageability factor under Rule 23(b)(3) need not be analyzed here as this is a "settlement-only class certification." *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems ... for the proposal is that there be no trial"); *see also Prudential*, 148 F.3d at 321 ("Because the district court always possesses the authority to decertify or modify a class that proves unmanageable, examination of this factor in the standard class action would appear to be perfunctory").

Accordingly, the Court should grant certification for settlement purposes.

## II.     The Court Should Grant Final Certification of the FLSA Collective for Settlement Purposes

Courts in the Third Circuit apply the "Lusardi factors" to certification of an FLSA opt-in class. These factors are: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to [defendants] which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations." *Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, at *17 (D.N.J. Apr. 8, 2011) (quoting *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 359 (D.N.J. 1987), *vacated in part sub nom. Lusardi v. Lechner*, 855 F.2d 1062 (3d Cir. 1988). "Because the analysis required for final certification largely overlaps with class certification analysis under Federal Rule of Civil Procedure 23(a), the Court need only address the Lusardi factors in passing"; "there is little difference between the two approaches." *Bredbenner*, 2011 WL 1344745, at *17 (internal quotation marks & brackets omitted). Accordingly, satisfying the more stringent requirements of Rule 23 generally qualifies the class to be certified as a collective action. *Hall v. Best Buy Co.*, 274 F.R.D. 154, 167 (E.D. Pa. 2011);

*see also Atis v. Freedom Mortg. Corp.*, 2018 WL 5801544, at *8 (D.N.J. Nov. 6, 2018) ("For substantially the same reasons as the Rule 23 standards are met, the Court finds that the FLSA collective action meets the standard to be finally certified on a provisional basis for settlement purposes only.")

As this Court has previously stated when granting conditional certification of the FLSA collective in this action, "Plaintiffs and the Proposed Collective seek the same relief and allege the same claims" and as forth above, Defendants' unlawful conduct being challenged in this litigation are common to all class members, not based on disparate factual and employment settings, and not subject to any defenses that appear individual to each plaintiff. *Mirabal v. Caribbean Car Wash, Inc.*, No. 19-CV-16608-MCA-ESK, 2020 WL 5939780, at *4 (D.N.J. Oct. 7, 2020). Furthermore, as set forth above in Section I.d. Class Representatives and Class Counsel have actively and intensively investigated and prosecuted this case and shall fairly and adequately protect the interests of the class. Finally, as set forth above in Section I. e. ii., just like a class action, a collective action here is also procedurally a superior method of adjudication over individual actions that just may not be procedurally feasible for low-wage immigrant workers. Thus, the Settlement Agreement fairly and efficiently resolves the claims of the FLSA collective.

Accordingly, final certification of the FLSA collective for settlement purposes should be granted.

### III.   Preliminary Approval of the Settlement Agreement is Appropriate

The approval of a proposed class action settlement is a matter of discretion for the trial court. *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *Churchill Village, LLC v. Gen. Elec. Co.*, 361 F.3d 566, 575 (9th Cir. 2004); *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d

1072, 1079 (2d Cir. 1998). Courts strongly favor the settlement of complex class action litigation. *See Ehrheart*, 609 F.3d at 594-95; *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004); *In re GMC*, 55 F.3d at 784.

Rule 23(e)(1) authorizes a court to grant preliminary approval of a proposed class action settlement so long as the moving parties demonstrate to the court that the will "likely be able to approve the proposal under Rule 23(e)(2)." Rule 23(e)(2) in turn authorizes final class-binding approval of the proposal upon a showing that the settlement is "fair, reasonable, and adequate" after considering four factors: two procedural and two substantive. The procedural factors ask whether the class representatives and class counsel have adequately represented the class and whether the proposal was negotiated at arm's length. The substantive factors look at the adequacy of the class's relief and the equity of its distribution across the class.[2]

Courts find that a proposed settlement "likely" meets the procedural requirements of adequate representation and arm's length negotiation where the settlement is proceeded by adversarial litigation and discovery sufficiently substantial to allow for an informed settlement. *See* Rubinstein, 4 Newberg on Class Actions § 13:14 (5th ed.). Courts find that a proposed settlement "likely" meets the substantive requirements of providing adequate relief for the class and treating class members equitably relative to each other when the value falls within a range of reasonableness and has no obvious deficiencies. *See* Newberg § 13:15. Therefore, Plaintiffs at this stage must demonstrate that the proposed settlement: (1) was the product of arm's-length negotiations; (2) falls within a range of reasonableness warranting final approval; and (3) has no obvious deficiencies. *See In re Thalomid & Revlimid Antitrust Litig.*, No. CV146997 (MCA)

---

[2] Congress codified these standards in an amendment to Rule 23 at the end of 2018. The new Rule 23(e) essentially adopts the jurisprudence courts had developed in the absence of clear standard for preliminary approval. Therefore, the standard has not significantly changed. *See* Newberg § 13:14.

(MAH), 2020 WL 4197092, at *1 (D.N.J. May 26, 2020); *Udeen v. Subaru of Am., Inc.*, 2019 WL 4894568, at *2 (D.N.J. Oct. 4, 2019); *Shapiro v. All. MMA, Inc.*, 2018 WL 3158812, at *2 (D.N.J. June 28, 2018).

Plaintiffs currently seek preliminary approval of the settlement agreement. Preliminary approval may be likened to a finding that there is "probable cause" to submit the agreement to the class members and hold a full-scale fairness hearing. *See In re Traffic Executive Ass'n -- Eastern Railroads*, 627 F.2d 631, 634 (2d Cir. 1980); *see also Shapiro*, 2018 WL 3158812, at *2 ("Preliminary approval is not binding, and it is granted unless a proposed settlement is obviously deficient").

Here, the proposed settlement was a product of arm's length negotiations. First, the settlement was proceeded by adversarial litigation and discovery sufficiently substantial to allow for an informed settlement. Prior to the commencement of negotiations, the Parties exchanged, reviewed, and analyzed numerous documents and engaged in motion practice. Class Counsel's extensive investigation into the facts and legal issues associated with this litigation included numerous interviews through the help of Spanish translators with the Named Plaintiffs and each opt-in Plaintiff; review of the numerous documents produced; responses to a dozen sets of interrogatories; and detailed spreadsheet calculations analyzing each individual claim. (Mermelstein Dec. ¶¶ 6, 10.) The Parties only reached an agreement in principle following numerous settlement discussions spanning approximately five months. (*Id.* ¶ 14.) Accordingly, the Parties were equipped to fully appreciate the strengths and weaknesses of their respective positions in the Litigation. Second, as set forth above in Section I. d., Class Counsel is a respected employment law firm that has substantial experience litigating wage and hour collective and class actions. For their part, Defendants are represented by Victor A. Deutch of

Deutch & Associates LLC, an experienced and well-respected litigator who has represented New Jersey businesses for almost fifty years. Accordingly, the Parties' counsel have the experience necessary to fairly evaluate the strengths and weaknesses of their clients' respective positions in the Litigation, and to recommend a settlement to their clients.

As set forth above, the proposed settlement agreement equitably applies general formulas to class members in determining their settlement amounts. Class Counsel have estimated that, if taken fully to trial, the best possible outcome for the class here would be approximately $2,245,437.15. The proposed Settlement Fund of $1,000,000 represents approximately a 44.5% recovery of the estimated maximum potential recovery and falls within the range of reasonableness considering the risks of litigation,[3] the time necessary to achieve a final resolution through trial and any appeals,[4] and the immediate benefits accruing to the Class under the Settlement. *See Singleton v. First Student Mgmt. LLC*, 2014 WL 3865853, at *7 (D.N.J. Aug. 6, 2014) (finding a 40% recovery to be reasonable in granting preliminary approval to a class action settlement of NJWHL claims); *Acevedo v. Brightview Landscapes, LLC*, 2017 WL 4354809, at *12 (M.D. Pa. Oct. 2, 2017) (finding a 40% recovery to be reasonable in granting final approval to a class action settlement of wage and hour claims).

Thus, as the settlement was a product of arm's length negotiations, the negotiations followed the exchange of substantial discovery, the counsel involved are experienced with wage and hour collective and class action litigation, and the settlement falls within the range of

---

[3] This risk is especially high due to the uncertainty of the retroactivity of the 2019 NJWHL amendments that expanded the Statute of Limitations for NJWHL claims to six years from two while also providing for 200% liquidated damages. Class Counsel estimate that these amendments represent at least 60-70% of the total damages available to Plaintiffs.

[4] The waiting time Plaintiffs would face before this case would go to trial is especially long due to the disruption to jury trials in this District caused by the COVID-19 pandemic. *See* Standing Order 2021-04.

reasonableness, the Court should "apply an initial presumption of fairness" to the settlement agreement and grant preliminary approval of the same. *See Udeen*, 2019 WL 4894568, at *2 ("A settlement is presumed fair when it results from arm's-length negotiations between experienced, capable counsel after meaningful discovery") (internal citations and quotation marks omitted).

## IV.     The Court Should Approve the Proposed Settlement Under the FLSA

The decision to approve the settlement of an FLSA collective action lies within the trial court's discretion. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982). In exercising that discretion, the court should be mindful of the strong presumption in favor of settlement. *See, e.g., Farris v. J.C. Penney Co.*, 176 F.3d 706, 711 (3d Cir. 1999). "To approve a settlement resolving claims under the FLSA, the Court must scrutinize its terms for fairness and determine that it resolves a bona fide dispute." *Bredbenner*, 2011 WL 1344745, at *18.

Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate guarantor of fairness. *Lynn's*, 679 F.2d at 1353–54. Furthermore, as set forth above in Section II., Plaintiffs have met the required factors to establish an initial presumption of fairness. The parties have a bona fide dispute as to: (1) whether Defendants unlawfully retained tips earned by the proposed class; (2) whether Defendants unlawfully paid the proposed class below the minimum wage; (3) whether Defendants failed to provide overtime compensation to the proposed class for hours worked in excess of forty (40) in a workweek; and (4) to the extent liability were to be established, the extent of damages owed to the proposed class.

In light of the uncertainties regarding the resolution of the bona fide disputes between the parties and the significant costs associated with protracted litigation, the $1,000,000 Settlement Fund represents a fair and significant amount. Although recovery could be greater if Plaintiffs

were to prevail on each bona fide dispute and survive appeal, Plaintiffs' recovery could also be much lower or nothing at all if Defendants prevailed. As the proposed settlement represents a fair resolution of several bona fide disputes, the proposed settlement should be approved under the FLSA.

**V.**     **The Court Should Preliminarily Approve Class Counsel's Fees and Costs Request**

The final decision regarding the reasonableness of Class Counsel's fees and costs should be made during the Final Settlement Approval Hearing, following notice to class members and the objection period. The reasonableness of such fees and costs are better evaluated after such period, as this Court will be made aware of any objections by then and as Class Counsel will spend a substantial amount of additional time and effort working on this matter from the date of the instant motion through the date of the Final Settlement Approval Hearing.

However, it is worth noting that the attorneys' fees and costs in this matter are requested as a percentage of the settlement, which is the favored method for calculating attorneys' fees in such cases. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478-79 (1980); *In re AT&T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006); *Prudential*, 148 F.3d at 333 (3d Cir. 1998); Court Awarded Attorney Fees, Report of Third Circuit Task Force, 108 F.R.D. 237 (1985); *Bredbenner*, 2011 WL 1344745 (common fund distribution for attorney's fees in hybrid FLSA/Rule 23 wage and hour case). The percentage-of-recovery method "is the prevailing methodology used by courts in this Circuit for wage-and-hour cases." *Bredbenner*, 2011 WL 1344745, at *19, (citing *Chemi v. Champion Mortg.*, 2009 WL 1470429, at *10 (D.N.J. May 26, 2009)); *In re Janney Montgomery Scott LLC Fin. Consultant Litig.*, 2009 WL 2137224, at *14 (E.D. Pa. July 16, 2009); *Lenahan v. Sears, Roebuck & Co.*, 2006 WL 2085282, at *19 (D.N.J. July 24, 2006).

Even in cases where statutory attorney's fees attach, such as in FLSA cases, the percentage-of-recovery doctrine is still the preferred manner to calculate attorney's fees. The lodestar method, whereby the attorney's time is multiplied by the reasonable hourly rate, remains disfavored because "regardless [of] how a total settlement structure is formally structured . . . every dollar given to class counsel means one less dollar for the class." *In re Cendant Corp. Litig.*, 264 F.3d 201, 256 (3d Cir. 2001); see also *In re GMC*, 55 F.3d at 821-822 (rejecting lodestar fee and directing that percentage-of-recovery should have been utilized even though the agreement for fees was ostensibly distinct from the agreement to pay class members because of "economic reality" of such arrangement).

In common fund cases, fee awards generally range anywhere from nineteen percent (19%) to forty-five percent (45%) of the settlement fund. *See In re GMC*, 55 F.3d at 822 (citing *In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 533 (E.D. Pa. 1990)). Here, Class Counsel requests a fee of 33 1/3% of the Settlement Payment ($333,333.33). (SA § 3.2.) This percentage is in line with what is routinely provided in such cases. *See*, *e.g.*, *Bredbenner*, 2011 WL 1344745, at *21 (awarding 32.6% of $3 million, or $978,000, plus costs, in wage and hour case and citing to cases providing same); *In re Safety Components, Inc. Sec. Litig.*, 166 F Supp. 2d 72, 102 (D.N.J. 2001) (granting award of 33 1/3 % in common fund case and citing to ten cases from this Circuit holding the same).

Class Counsel's application for attorneys' fees shall ultimately be separate from the approval of the Settlement Agreement and will be fully briefed prior to final approval. (SA § 3.2.) Because the fee is well within established bounds and the class and the Court shall have opportunity to weigh in and evaluate Class Counsel's application for attorneys' fees, an initial determination that the fee request is fair is appropriate.

**VI.**     **The Court Should Approve the Proposed Form of Notice and Notice Plan**

To satisfy due process, notice to class members must be "reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Atis*, 2018 WL 5801544, at \*9. The form of notice must be sufficient to accomplish this purpose in accordance with the dictates of Fed. R. Civ. P. 23. Furthermore, "[a]lthough the notice need not be unduly specific...the notice document must describe, in detail, the nature of the proposed settlement, the circumstances justifying it, and the consequences of accepting and opting out of it." *In re Diet Drugs Prod. Liab. Litig.*, 369 F.3d 293, 308–10 (3d Cir. 2004) (internal quotations omitted). While notice by mail is generally preferred for class members who have been identified, notice by publication may be used in lieu of individual notice where individual notice is infeasible or where the names and addresses of class members are not easily ascertainable. *See* Rubinstein, 3 Newberg on Class Actions § 8.29; *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 317, 70 S. Ct. 652, 658 (1950); *Sweeney v. Alcon Lab'ys*, No. 20-2066, 2021 WL 1546031, at \*3 (3d Cir. Apr. 20, 2021); *Shurland v. Bacci Cafe & Pizzeria on Ogden, Inc.*, 271 F.R.D. 139, 145 (N.D. Ill. 2010).

Here, both the Summary Notice and the Notice of Proposed Settlement and Fairness Hearing satisfy all such Rule 23 and due process considerations. The Summary Notice and the Notice of Proposed Settlement clearly set forth: (1) the nature of the action; (2) detailed information about the settlement terms and the claims being released; (3) Class Counsel's requested fees and expenses; (4) class members' right to object to the settlement and the deadlines and procedures for such; (5) the class members' right to opt-out of the settlement and the deadlines and procedures for such; (6) the procedure to receive additional information; and

(7) the contact information for the Claims Administrator and Class Counsel.[5] The Summary Notice also provides the procedure to request the more detailed Notice of Proposed Summary and Claim Form from the Claims Administrator.[6]

The proposed notice procedure also satisfies due process considerations. The procedure requires that the Notice of Proposed Settlement be mailed, via First Class mail postage prepaid, to each class member's last known residential address as recorded in Defendants' records. Where Class Counsel has more updated records, it will provide those to the Claims Administrator. (Mermelstein Dec. ¶ 41.) The Administrator will also perform a skip trace to mail returned as undeliverable. (Mermelstein Dec. ¶ 41; SA § 2.5.1.) Thus, individualized notice is being provided to all Class Members whose addresses are reasonably ascertainable. Notice by publication in both an English and Spanish language newspaper will be provided for the Class Members whose identity or address cannot be reasonably ascertained. (SA § 2.5.2.) Class Counsel believe that the majority of the damages here are owed to the 22 opt-in Plaintiffs. This is because these workers constituted the bulk of the full-time workforce whereas the majority of the putative class members were either part-time workers that mostly worked on weekends or workers who only worked at the car wash briefly. (Martinez Dec. ¶¶ 10, 14; Mirabal Dec. ¶¶ 10, 14; Ochoa Dec. ¶¶ 11, 15; Mermelstein Dec. ¶ 19.) Most of the weekend workers would not have worked overtime hours, and so would only be owed damages for failure to pay minimum wage, which are significantly less than the estimated overtime damages owed. (Mermelstein Dec. ¶ 46.) The relatively small claims of the Class Members who will not be receiving individualized notice further supports notice by publication as the "best notice that is practicable under the circumstances." Rule 23(c)(2)(B).

---

[5] *See* Exhibit 2 to the Settlement Agreement.
[6] *See* Exhibit 1 to the Settlement Agreement.

The proposed notice procedure also provides for a generous forty-five (45) day return deadline. (SA § 2.8.4.)

Accordingly, the form of the proposed notices and claim process satisfy both due process and the requirements of Rule 23 and should be approved. *See, e.g., Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175 (1974) ("individual notice is clearly the 'best notice practicable' within the meaning of Rule 23(c)(2)); *Bernhard v. TD Bank*, 2009 WL 3233541, at *5 (D.N.J. Oct. 5, 2009); *Lawson v. AT&T Mobility, LLC*, 687 F.3d 109, 123-24 (3d Cir. 2012); *see also, Aboud v. City of Wildwood*, No. CIV. 12-7195 JS, 2013 WL 2156248, at *8 (D.N.J. May 17, 2013) (finding 45-day opt-in period appropriate).

## VII. The Court Should Appoint Settlement Services, Inc. As the Settlement Administrator and Award the Settlement Administrator its Costs and Fees

Finally, Plaintiffs request the Court approve Settlement Services, Inc. ("SSI") as a settlement administrator and preliminarily approve its costs and fees to be incurred in distributing the settlement. SSI has significant experience in administrating and distributing class settlement, including wage and hour settlements. (Mermelstein Dec. ¶ 51.) As the Settlement Administrator SSI will update each Class members' address through the USPS National Change of Address database before mailing Notice Packets to each Class member. SSI will also perform skip tracing on returned undeliverable Notice Packets to ascertain new addresses. SSI will process and review each claim form as well as perform outreach to Class members with deficient claim forms. SSI will review claim forms submitted by non-previously identified potential Class members to determine their eligibility to be included in the Class. Finally, SSI will issue payments to all Class members. SSI has provided an estimated bid of a total cost of approximately $13,000 for their services which Class Counsel finds reasonable. (Mermelstein

22

Dec. ¶ 51.)

The Settlement Agreement provides that the costs of administering the settlement shall be paid from the Settlement Fund. Settlement Agmt. §2.3. Where a settlement agreement calls for the costs of administration to be borne by the settlement fund, the Court should approve same. *See, e.g. In re High-Tech Emp. Antitrust Litig.*, 2013 WL 6328811, at *5 (N.D. Cal. Oct. 30, 2013) ("all costs incurred in disseminating Notice and administering the Settlement shall be paid from the Settlement Fund pursuant to the Settlement Agreement").

Thus, Plaintiffs respectfully request the Court appoint SSI as the settlement administrator and preliminarily approve SSI's reasonable costs and fees, to be paid from the Settlement Fund.

## CONCLUSION

The Settlement Agreement is fair, adequate and reasonable and meets the criteria for approval of class action settlements. The Settlement Agreement is the product of arm's-length negotiation between Counsel for the Parties, and the benefits of the settlement outweigh the uncertainty and added time and expense that continued litigation of this matter would entail. Plaintiffs therefore respectfully request that the Court preliminarily approve the Settlement Agreement and enter the proposed preliminary approval order attached as Exhibit 4 to the Settlement Agreement.

For the foregoing reasons, Plaintiffs respectfully ask that the Court grant their Motion to: (1) conditionally certify a settlement class for all claims under Federal Rule of Civil Procedure 23(a) & (b)(3); (2) grant final certification of the FLSA collective for settlement purposes; (3) grant preliminary approval of the settlement of the Rule 23 class claims; approve the settlement of the FLSA claims; (5) approve the Notice of Proposed Class Action Settlement

("Notice"); (6) appoint Arenson, Dittmar & Karban as class counsel; (7) appoint Named

Plaintiffs Mirabal, Arango, Martinez, Toledo, Ochoa, Corbo, and Valdez as Class

Representatives; and (8) appoint Settlement Services, Inc. as the claims administrator.

Dated:  New York, New York
        May 24, 2021

                                    Respectfully submitted,

                                    ARENSON, DITTMAR & KARBAN


                                    _____/s/_____

                                    Avi Mermelstein
                                    Attorneys for Plaintiffs
                                    200 Park Avenue, Suite 1700
                                    New York, New York 10166
                                    avi@adklawfirm.com
                                    (212) 490-3600