**ARENSON, DITTMAR & KARBAN**
AVI MERMELSTEIN (N.J. ATTORNEY ID# 907892012)
200 Park Avenue, Suite 1700
New York, NY 10166
Tel: (212) 490-3600
Attorneys for Plaintiffs and the Classes

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

------------------------------------------------------------- X

**RIGOBERTO ANDUX MIRABAL, GABRIEL
CANO ARANGO, YOAN AQUINO
MARTINEZ, LUCAS PEDRONZO TOLEDO,
JULIO CESAR OCHOA, NELSON BATISTA
CORBO, WILLIAM RICARDO ANTUNEZ
VALDEZ, and THE ESTATE OF CARLOS
ALBERTO** on behalf of themselves and all others
similarly situated who were employed by
Caribbean Car Wash, Inc.

|    **Civil Action**
|
|    **Case No.: 19-cv-16608-MCA-ESK**
|
|
**Plaintiffs,**    |
- against -    |
|
|
**CARIBBEAN CAR WASH, INC., ULPIANO
RODRIGUEZ, ROBERTO RODRIGUEZ, and
OMAR RODRIGUEZ,**

**Defendants,**

------------------------------------------------------------- X

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE SETTLEMENT**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................... 1

FACTUAL BACKGROUND .............................................................................. 2

PROPOSED SETTLEMENT TERMS ................................................................ 3

ARGUMENT ...................................................................................................... 6

   I.    THE SETTLEMENT IS ENTITLED TO A "PRESUMPTION OF FAIRNESS" ...... 6

   II.   THE *GIRSH* FACTORS FURTHER INDICATE THAT FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE ............................................. 7

   III.   NOTICE TO THE CLASS SATISFIED THE REQUIREMENTS OF RULE 23 AND DUE PROCESS .............................................................. 14

   IV.   THE COURT SHOULD AWARD CLASS COUNSEL'S REQUESTED FEES AND COSTS ........................................................................... 15

   V.   THE COURT SHOULD AWARD THE SETTLEMENT ADMINISTRATOR ITS COSTS AND FEES ............................................................. 22

CONCLUSION ................................................................................................. 23

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Atis v. Freedom Mortg. Corp.*, 2018 WL 5801544 (D.N.J. Nov. 6, 2018)................. 8, 13, 14, 22

*Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745 (D.N.J. Apr. 8, 2011) .................... passim

*Chemi v. Champion Mortg.*, 2009 WL 1470429 (D.N.J. May 26, 2009) ...................................... 15

*Churchill Village, LLC v. Gen. Elec. Co.*, 361 F.3d 566 (9th Cir. 2004) ...................................... 7

*Dewey v. Volkswagen of Am.*, 728 F. Supp. 2d 546 (D.N.J. 2010).............................................. 21

*Dominguez v. Galaxy Recycling Inc.*, No. CV 12-7521 (LDW), 2017 WL 2495406 (D.N.J. June 9, 2017) ...................................................................................................... 12, 17, 20

*Ehrheart v. Verizon Wireless*, 609 F.3d 590 (3d Cir. 2010) ......................................................... 7

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975)........................................................................ passim

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 2000).......................................... passim

*Gutierrez v. Tryax Realty Mgmt., Inc.*, No. 17 CIV. 6752 (PAE), 2020 WL 777190 (S.D.N.Y. Feb. 18, 2020) ...................................................................................................... 19

*Hilaire v. Underwest Westside Operating Corp.*, No. 19-CV-3169 (PAE) (RWL), 2020 WL 774133 (S.D.N.Y. Feb. 17, 2020) .................................................................................. 19

*In re AT&T Corp. Secs. Litig.*, 455 F.3d 160 (3d Cir. 2006)...................................................... 21

*In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001)............................................ 9, 16, 19, 20

*In re Computron Software, Inc.*, 6 F. Supp. 2d 313 (D.N.J. 1998)............................................. 18

*In re Diet Drugs Prod. Liab. Litig.*, 369 F.3d 293 (3d Cir. 2004) ............................................. 14

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995).... 6, 7, 9, 16

*In re Ikon Off. Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 192 (E.D. Pa. 2000)............................... 22

*In re Janney Montgomery Scott LLC Fin. Consultant Litig.*, 2009 WL 2137224 (E.D. Pa. July 16, 2009) ....................................................................................................................... 15

*In re Prudential Ins. Co. of Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998) ..................................................................................................................... 15, 20

*In re Rite Aid Corp. Sec. Litig.,* 396 F.3d 294 (3d Cir. 2005)............................................... 20, 21

*In re Safety Components, Inc. Sec. Litig.*, 166 F Supp. 2d 72 (D.N.J. 2001) .................... 9, 16, 20

*In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525 (E.D. Pa. 1990)................... 16, 19

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004)...................................... 6, 7, 9

*Kirsch v. Delta Dental,* 534 Fed. Appx. 113 (3d Cir. 2013) ............................................... 21

*Lenahan v. Sears, Roebuck & Co.*, 2006 WL 2085282 (D.N.J. July 24, 2006) ................ 8, 13, 15

*Lora v. J. V. Car Wash, LTC.*, No. 11 CIV. 9010 LLS AJP, 2015 WL 4496847 (S.D.N.Y. July 24, 2015) ...................................................................................................................... 18

*Sandoval, et al. v. Galaxy General Contracting Corp., et al.*, No. 10-CV-5771 (PGG) (S.D.N.Y.) ....................................................................................................................... 19

*Sawadogo v. Zap Lube & Car Wash, Inc.*, No. CV 20-1196(SDW)(LDW), 2020 WL 6689826 (D.N.J. Nov. 13, 2020)................................................................................................... 19

*Singleton v. First Student Mgmt. LLC*, 2014 WL 3865853 (D.N.J. Aug. 6, 2014) ..................... 13

*Sweeney v. Alcon Lab'ys*, No. 20-2066, 2021 WL 1546031 (3d Cir. Apr. 20, 2021).................. 14

<u>Statutes</u>

29 U.S.C. 201, *et seq.* (Fair Labor Standards Act) ....................................................................... 1

N.J.S.A. 34:11-56a, *et seq.* (New Jersey Wage and Hour Law)........................................ 4, 16, 17

Rules

Fed. R. Civ. P. 23 ................................................................................................ passim

Treatises

Rubinstein, Newberg on Class Actions ................................................................. 14, 20

## INTRODUCTION

We represent Plaintiffs Rigoberto Andux Mirabal ("Mirabal"), Gabriel Cano Arango ("Arango"), Yoan Aquino Martinez ("Martinez"), Lucas Alberto Pedronzo Toledo ("Toledo"), Julio Cesar Ochoa ("Ochoa"), Nelson Batista Corbo ("Corbo"), William Ricardo Antunez Valdez ("Valdez"), and the Estate of Carlos Alberto ("Alberto") (collectively the "Named Plaintiffs") and a class and collective (together with Named Plaintiffs, "Plaintiffs") in the above-captioned class and collective action.

This action arises from the alleged failure of Defendants Caribbean Car Wash, Inc. ("CCW"), Ulpiano Rodriguez ("Ulpiano"), Roberto Rodriguez ("Roberto"), and Omar Rodriguez ("Omar"), (collectively "Defendants"), to pay, and failure to ensure payment to Named Plaintiffs and the other members of the putative class, wages, including but not limited to minimum wage and overtime compensation, for work they performed on behalf of Defendants.

On July 22, 2021, the Court granted Plaintiffs' Motion for Preliminary Approval of Settlement in this matter, and directed the parties to facilitate notice to the class in anticipation of a Final Approval Hearing scheduled for January 13, 2022. (ECF Doc. No. 65.)

The settlement will require Defendants to pay One Million Dollars ($1,000,000) to settle all claims in this action. To date, not a single class member has objected to or opted-out of the settlement. This extraordinarily positive reaction of the class demonstrates that the class is quite pleased with the settlement, believes the settlement to be fair, and wants to be paid without further delay. Moreover, all relevant factors this Court is to examine when determining the fairness of the settlement weigh heavily in favor of approving the settlement.

For the reasons stated above and detailed below, the Court should approve the settlement.

## FACTUAL BACKGROUND

On August 13, 2019, Named Plaintiffs filed this collection and class action lawsuit against Defendants. (ECF Doc. No. 1). Defendants employed the Named Plaintiffs and other members of the putative class and collective (collectively, "Plaintiffs") to perform non-managerial work related to Defendants' operation of a car wash. Named Plaintiffs allege that Defendants failed to provide Plaintiffs any explanation regarding their tips, unlawfully retained portions of their tips, and failed to pay Plaintiffs the proper minimum wage for each hour worked and the proper overtime compensation at the rate of one and one-half times the regular rate for work in excess of forty (40) hours per workweek. In addition to the eight Named Plaintiffs, fourteen additional similarly situated employees of Defendants have filed consent to join forms in this action to date. (*See* Filed Consent to Join Forms, ECF Nos. 4, 5, 12, 17, 25–27.)

For purposes of the proposed settlement, both the class and the collective (together, the "Class") are defined as:

> All current and former non-exempt employees of Caribbean Car Wash, Inc. for the period August 13, 2013 through December 31, 2019. (Managers, supervisors, officers, executives, managerial or administrative personnel are not part of this group.)

The Parties have exchanged, reviewed, and analyzed numerous documents and have engaged in motion practice. Class counsel have conducted extensive investigation into the facts and legal issues associated with this litigation. This included numerous interviews through the help of Spanish translators with the Named Plaintiffs and each opt-in Plaintiff, review of the numerous documents produced, analysis of all applicable laws and recent amendments to such, and extensive spreadsheet calculations analyzing each individual claim. (Declaration of Avi Mermelstein, Dec. 24, 2021 ("Mermelstein Dec.") ¶ 6.) Following the exchange of initial disclosures, the Parties exchanged document demands and interrogatories. Plaintiffs' counsel

requested, among other things, time and pay records for Named Plaintiffs, Opt-In Plaintiffs, and other Class Members. Defendants' counsel submitted twelve sets of interrogatories, one set for each Named Plaintiff and a set for several Opt-In Plaintiffs, as well. The Parties then substantially completed and submitted responses to each other's requests. (Mermelstein Dec. ¶ 10.)

The Parties have reached a settlement subject to the Court's approval. After extensive discovery, analysis, and deliberation, the Parties believe that the Settlement described in the Joint Stipulation of Settlement and Release ("Settlement Agreement" or "SA," ECF Doc. No. 59) previously submitted is fair, reasonable, and adequate. The Parties believe that the settlement serves the best interest of the Class based on all the facts and circumstances, including the risk of significant delay and the uncertainty of class certification. In reaching this conclusion, Class Counsel has considered, among other things, the risks of litigation, the time necessary to achieve a final resolution through trial and any appeals, the complexity of Plaintiffs' claims, and the benefits accruing to the Class under the Settlement. The settlement of this action will avoid the substantial expense, inconvenience, and risk of continued litigation. Accordingly, Plaintiffs now seek final approval of the Settlement.

## **Proposed Settlement Terms**

The Settlement Agreement provides that Defendants shall pay a fixed settlement of One Million Dollars ($1,000,000) ("Settlement Fund"), to be distributed on a pro rata basis to members of the Class, net of professional fees, costs, and administrative expenses depending on the size of the Class Member's claim. Per Section 3.1 of the Settlement Agreement, individual claims will be calculated as the sum of the following:

A. Minimum wage claims: for each work week during the Relevant Period in which the Individual Claimant worked for Defendants and was paid an hourly rate less than the minimum wage: (1) compute the total hours worked; (2) multiply by the difference between the NJWHL Minimum Wage applicable at the time and the hourly rate; (3) multiply the amount derived in (2) by three to account for 200% NJWHL liquidated damages.

B. Overtime claims: for each work week during the Relevant Period in which the Individual Claimant worked for Defendants more than 40 hours: (1) compute the total overtime hours worked by subtracting 40 from the total hours worked; (2) multiply by half the NJWHL Regular Rate; (3) multiply the amount derived in (2) by three to account for 200% NJWHL liquidated damages.

The Settlement Agreement permits Class Counsel to petition the Court for an award of attorneys' fees not to exceed Three Hundred Thirty-Three Thousand Dollars and Thirty-Three cents ($333,333.33), and for costs (including reimbursement of Class Counsel's actual expenses in this Litigation and the fees and costs of the Administrator) not to exceed Eighteen Thousand Dollars ($18,000.00). These professional fees and costs shall be paid from the Settlement Fund. Section 3.2 of the Settlement Agreement provides that the outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not increase the amount of the Settlement Fund, terminate the Settlement Agreement or otherwise affect the Court's final approval of the Settlement Agreement. Any fees or costs sought by Class Counsel but not approved by the Court shall revert to the Settlement Fund.

In exchange for Defendants' payments and other obligations under the Settlement Agreement, Class Members will release Defendants for wage-and-hour claims. However, only

Class Members who opt-in to the FLSA collective by submitting signed Claim Forms will release claims under the FLSA. (*See* SA § 4.1.7)

### **Notice to and Response from Class**

Per the Court's Order and the terms of the Settlement Agreement, notice was published in El Diario on July 30, 2021. (Mermelstein Dec. ¶ 18, Ex. 1.) Because the Newark Star Ledger was not accepting legal notices at the time of publication, notice was published in the nearest English language publication, the Union County Local Source, on August 5, 2021. (*Id*. ¶ 19, Ex. 2.) No additional requests for notice or claim forms was made as a result of the publication. (*Id*. ¶ 20.) The Administrator was therefore left to mail notice to the addresses on the Class List. (*Id*.) The Administrator timely mailed notice to the 47 class members identified from the Class List. (Declaration of Robert Hyte, Dec. 22, 2021, ¶ 7.) Nine were returned as undeliverable without forwarding address information. (*Id*. ¶ 8.) Of those nine, the Administrator conducted a trace and located addresses for four of them. (*Id*.) The Administrator re-mailed notice to the four address and none were returned as undeliverable. (*Id*.)

The last date by which Class Members could file claims forms, opt-out, or object to the settlement was November 30, 2021. (Hyte Dec. ¶¶ 11–13.) In addition to the 22 class members who had opted-in to the FLSA collective and were deemed to have filed claims per the Settlement Agreement, the Administrator received two additional timely claims, for a total of 24 (51% of class members). (*Id*. ¶ 13.) As of December 22, 2021, the Administrator had received no opt-out requests or objections, timely or otherwise. (*Id*. ¶¶ 11–12.)

## ARGUMENT

### I.   THE SETTLEMENT IS ENTITLED TO A "PRESUMPTION OF FAIRNESS"

The Court preliminarily approved the settlement. This preliminary determination establishes an initial presumption of fairness when the court finds that: (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) (presumption of fairness applies even when settlement negotiations precede class certification); *Bredbenner v. Liberty Travel, Inc.*, No. CIV.A. 09-1248 MF, 2011 WL 1344745, at *10 (D.N.J. Apr. 8, 2011).

Here, the proposed settlement was a product of arm's length negotiations following sufficient discovery. Courts find that a proposed settlement "likely" meets the procedural requirements of arm's length negotiation where the settlement is proceeded by adversarial litigation and discovery sufficiently substantial to allow for an informed settlement. *See* Rubinstein, 4 Newberg on Class Actions § 13:14 (5th ed.). The settlement was preceded by adversarial litigation and discovery sufficiently substantial to allow for an informed settlement. Prior to the commencement of negotiations, the Parties exchanged, reviewed, and analyzed numerous documents and engaged in motion practice. Class Counsel's extensive investigation into the facts and legal issues associated with this litigation included numerous interviews through the help of Spanish translators with the Named Plaintiffs and each opt-in Plaintiff; review of the numerous documents produced; responses to a dozen sets of interrogatories; and detailed spreadsheet calculations analyzing each individual claim. (Mermelstein Dec. ¶¶ 6, 10.) The Parties only reached an agreement in principle following numerous settlement discussions

spanning approximately five months. (*Id.* ¶ 14.) Accordingly, the Parties were equipped to fully appreciate the strengths and weaknesses of their respective positions in the Litigation.

Regarding the third factor—experience of counsel—as set forth below in Section IV, Class Counsel has substantial experience litigating wage and hour collective and class actions. For their part, Defendants are represented by Victor A. Deutch of Deutch & Associates LLC, an experienced and well-respected litigator who has represented New Jersey businesses for almost fifty years. Accordingly, the Parties' counsel have the experience necessary to fairly evaluate the strengths and weaknesses of their clients' respective positions in the Litigation, and to recommend a settlement to their clients.

Last but not least, no class member has objected to the settlement.

Thus, as the settlement was a product of arm's length negotiations, the negotiations followed the exchange of substantial discovery, the counsel involved are experienced with wage and hour collective and class action litigation, and no class member has objected, the Court should "extend an initial presumption of fairness" to the settlement agreement. *McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448, 459 (D.N.J. 2008).

## II.    THE *GIRSH* FACTORS FURTHER INDICATE THAT FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE

The approval of a proposed class action settlement is a matter of discretion for the trial court. *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *Churchill Village, LLC v. Gen. Elec. Co.*, 361 F.3d 566, 575 (9th Cir. 2004); *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1998). Courts strongly favor the settlement of complex class action litigation. *See Ehrheart*, 609 F.3d at 594-95; *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004); *In re GMC*, 55 F.3d at 784.

The Third Circuit reviews nine factors when determining the fairness of a class

settlement, the so-called "*Girsh* factors": (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 179 (3d Cir. 2012); *see also Lenahan v. Sears, Roebuck and Co.*, 266 Fed. Appx. 114, 120 (3d Cir. 2008) (applying *Girsh* factors to determine if settlement of hybrid Rule 23/FLSA claims was reasonable); *Deitz v. Budget Renovations & Roofing, Inc.* 2013 WL 2338496 (M.D. Pa. 2013) (applying *Girsh* factors to determine reasonableness of FLSA settlement); *Brumley v. Camin Cargo Control, Inc.* 2012 WL 1019337 (D.N.J. 2012) (applying *Girsh* factors to determine reasonableness of FLSA settlement and noting that other courts in the Third Circuit have done the same).

## A. The Complexity, Expense, and Likely Duration of the Litigation (*Girsh* Factor 1) Favors Final Approval

The first *Girsh* factor weighs in favor of settlement where the potential costs of trial, in terms of time, money, and effort, could be significant absent settlement. *See Atis v. Freedom Mortg. Corp.*, No. CV 15-03424 (RBK/JS), 2018 WL 5801544, at *4 (D.N.J. Nov. 6, 2018). Here, while the Parties had already substantially completed initial paper discovery, they would have had to take at least nine depositions (Joint Status Letter to Court, Nov. 2, 2020, ECF Doc. No. 41) and litigate issues of individual liability before proceeding to trial where, in the absence of records, liability and damages would turn on the credibility of Plaintiffs' testimony. The

waiting time Plaintiffs would have faced before this case went to trial would have been especially long due to the disruption to jury trials in this District caused by the COVID-19 pandemic. *See* Standing Order 2021-04. Class actions are by their nature complex litigation and the trial itself would have been lengthy, as would be the appeals process to follow trial. Therefore, the complexity, expense, and likely duration of the litigation (especially factoring in delays related to COVID-19) weigh in favor of settlement.

### B. The Reaction of the Class (*Girsh* Factor 2) Has Been Uniformly Positive

In determining the reaction of the class, "courts look to the number and vociferousness of the objectors." *In re GMC*, 55 F.3d at 812. Here, there was notice by publication in local Spanish and English newspapers, as well as individualized notice sent to 47 class mbmbers. While 24 class members have made claims, no objections or requests for exclusion had been received. The second *Girsh* factor therefore weighs heavily in favor of settlement.

### C. The Stage of the Proceedings and Amount of Discovery Completed (*Girsh* Factor 3) Gave Counsel an Adequate Appreciation of the Merits of the Case

The third *Girsh* factor "captures the degree of case development that class counsel have accomplished prior to settlement." *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001). "Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004); *accord In re Safety Components Int'l*, 166 F. Supp. 2d 72, 86 (D.N.J. 2001).

The settlement was proceeded by adversarial litigation and discovery sufficiently substantial to allow for an informed settlement. Prior to the commencement of negotiations, the Parties exchanged, reviewed, and analyzed numerous documents and engaged in motion practice. Class Counsel's extensive investigation into the facts and legal issues associated with this litigation included numerous interviews through the help of Spanish translators with the Named

Plaintiffs and each opt-in Plaintiff; review of the numerous documents produced; responses to a dozen sets of interrogatories; and detailed spreadsheet calculations analyzing each individual claim. (Mermelstein Dec. ¶¶ 6, 10.) The Parties only reached an agreement in principle following numerous settlement discussions spanning approximately five months. (*Id*. ¶ 14.) Accordingly, the Parties were equipped to fully appreciate the strengths and weaknesses of their respective positions in the Litigation and the third *Girsh* factor weighs in favor of settlement.

### D.  The Risk of Establishing Liability and Damages (*Girsh* Factors 4 and 5) Is Substantial Enough to Weigh in Favor of Settlement

All litigation has risks. In this particular case, the primary risks were establishing individual liability and establishing damages in the absence of records.[1]

The paucity of assets belonging to the corporate entity magnified the risk of establishing liability of the individual defendants. To be clear, Defendants here contested all liability and would have matched their testimony against Plaintiffs' as to the number of hours worked and wages paid. However, in order to reach beyond the corporation to achieve individual liability, Plaintiffs would have to establish that each individual defendant was sufficiently involved in the business and in control of its employees so as to qualify as an employer under the FLSA and NJWHL. Such a fact-specific determination would come down to testimony about each individual defendant's personal involvement in the business and would be inherently risky.

The other significant risk to Plaintiffs was establishing damages in the absence of contemporaneous time and pay records. Where an employer fails to keep accurate time records, FLSA jurisprudence offers plaintiffs some degree of leniency in their efforts to establish

---

[1] There were also risks associated with the uncertainty of the retroactivity of the 2019 NJWHL amendments that expanded the Statute of Limitations for NJWHL claims to six years from two while also providing for 200% liquidated damages. *See Delgado v. Auto Gallery LLC*, No. 20CV18593KSHCLW, 2021 WL 5864064, at *5 (D.N.J. Dec. 10, 2021). Class Counsel estimate that these amendments represent at least 60-70% of the total damages available to Plaintiffs. (Mermelstein Dec. ¶ 26.)

damages. *See Anderson v. Mt. Clemens Pottery*, 328 U.S. 680, 686-689 (1946); *see also Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1300 (3d Cir. 1991) (where an employee establishes that he has in fact performed work for which he was improperly compensated and shows sufficient evidence to show the amount and extent of that work as a matter of "just and reasonable inference," the court may award damages even though the award "may be only approximate").

However, the employee still must establish through admissible evidence that he is entitled to some damages for improperly compensated work prior to being entitled to the relaxed burden under *Anderson. See Gwynn v. City of Phila.*, 719 F.3d 295, 304 (3d Cir. 2013) (affirming summary judgment for employer where employees failed to establish that they actually worked at least some overtime even where employer failed to keep proper records pursuant to the FLSA); *see also Lugo v. Farmers Pride Inc.,* 737 F.Supp.2d 291, 315 (E.D. Pa. 2010) (decertifying wage and hour class because while the record indicated that some class members performed uncompensated work, others did not, and the plaintiffs presented no reliable manner to calculate damages class-wide for all class members); *but see Brock v. Seto*, 790 F.2d 1446, 1448 (9th Cir. 1986) (overturning district court's dismissal of class-wide damages claim where imprecise time records resulted in "speculative and unspecific" damage calculation because *Anderson* "leaves no doubt that an award of back wages will not be barred for imprecision where it arises from the employer's failure to keep records as required by the FLSA"); *Brock v. Tony & Susan Alamo Foundation,* 842 F.2d 1018 (8th Cir. 1988) (remanding to district court to "estimate and fashion a reasonable remedy that restores as fully as possible all employees covered by FLSA who were improperly denied compensation, regardless of the lack of records" where records did not indicate how many hours each employee worked).

To establish damages on a class-wide basis on their FLSA claims, Plaintiffs would be required to present a reasonable basis for determining the number of hours they worked. Pursuant to *Anderson* and its progeny, Plaintiffs intended to establish the amount of unpaid compensation owed to each class member through representative testimony before a jury. Though such testimony has been approved in other cases, the lack of precise records brings significant risk regarding the amount of damages a jury would award.

Class Counsel are experienced and realistic and understand that the resolution of liability and damages issues, the outcome of the trial, and the inevitable appeals process, are inherently uncertain. The proposed settlement alleviates such uncertainty and satisfies the fourth and fifth of the *Girsh* factors, weighing in favor of approving the settlement.

### E.  The Risk of Maintaining a Class Action Through Trial (*Girsh* Factor 6) Favors Settlement

The sixth *Girsh* factor for the Court to consider is the risk of maintaining the class action through trial. Here again, this factor weighs in favor of granting final approval of the settlement. While Plaintiffs remain confident that they could establish liability and damages on a class-wide basis, they remain realistic as to the risks and uncertainty inherent in maintaining class certification on their claims through trial.

### F.  The Uncertain Ability of Defendants to Withstand a Greater Judgment (*Girsh* Factor 7) Favors Settlement

The corporate defendant here is a single location car wash that both common sense and a review of financial documentation it produced indicated that it would lack the means to pay a judgment of larger magnitude. (Mermelstein Dec. ¶ 28.) That left the individual defendants. As discussed above, there was additional risk involved with proving liability for each individual defendant. Moreover, the ability of the individuals to withstand a significantly greater judgment

was far from assured. *See Dominguez v. Galaxy Recycling Inc.*, No. CV 12-7521 (LDW), 2017 WL 2495406, at *4 (D.N.J. June 9, 2017) (weighing this factor in favor of settlement where individual was only solvent defendant with ability to pay judgment). Therefore, this factor weighs in favor of settlement.

### G. The Settlement Is Within a Fair and Reasonable Range Based Upon the Attendant Risks of Litigation and the Best Possible Recovery (*Girsh* Factors 8 and 9)

The Court preliminarily approved the settlement amount of $1,000,000. As set forth above, the proposed settlement agreement equitably applies general formulas to class members in determining their settlement amounts. Class Counsel have estimated that, if taken fully to trial, the best possible outcome for the class here would be approximately $2,245,437.15. The proposed Settlement Fund of $1,000,000 represents approximately a 44.5% recovery of the estimated maximum potential recovery and falls within the range of reasonableness considering the risks of litigation discussed above and the immediate benefits accruing to the Class under the Settlement. *See Singleton v. First Student Mgmt. LLC*, 2014 WL 3865853, at *7 (D.N.J. Aug. 6, 2014) (finding a 40% recovery to be reasonable in granting preliminary approval to a class action settlement of NJWHL claims); *Acevedo v. Brightview Landscapes, LLC*, 2017 WL 4354809, at *12 (M.D. Pa. Oct. 2, 2017) (finding a 40% recovery to be reasonable in granting final approval to a class action settlement of wage and hour claims). In fact, courts have approved settlements where the class recovery fell well short of the recovery here. *See Lenahan v. Sears, Roebuck & Co.*, No. CIV. 02-0045, 2006 WL 2085282, at *15–16 (D.N.J. July 24, 2006), *aff'd*, 266 F. App'x 114 (3d Cir. 2008) (approving $15 million settlement when maximum exposure at trial may have been as high as $104 million because of the uncertainty of the final disposition of a trial); Memorandum of Law in Support of Plaintiffs' Motion for Final Approval (ECF Doc. No. 98-2) at 11–12 and Order Granting Final Approval of Settlement (ECF Doc. No. 102), *Atis v. Freedom*

*Mortg. Corp.*, 15-CV-03424 (D.N.J. June 26, 2019) (approving $4,480,000 FLSA/NJWHL settlement where maximum recovery was $11,804,000). Here, the parties believe the settlement reached is fair given the risks and duration of continued litigation. Therefore, the eighth and ninth *Girsh* factors weigh in favor of settlement.

In sum, all nine *Girsh* factors here weigh in favor of the settlement.

### III.    NOTICE TO THE CLASS SATISFIED THE REQUIREMENTS OF RULE 23 AND DUE PROCESS

To satisfy due process, notice to class members must be "reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Atis*, 2018 WL 5801544, at *9. The form of notice must be sufficient to accomplish this purpose in accordance with the dictates of Fed. R. Civ. P. 23. Furthermore, "[a]lthough the notice need not be unduly specific...the notice document must describe, in detail, the nature of the proposed settlement, the circumstances justifying it, and the consequences of accepting and opting out of it." *In re Diet Drugs Prod. Liab. Litig.*, 369 F.3d 293, 308–10 (3d Cir. 2004) (internal quotations omitted). While notice by mail is generally preferred for class members who have been identified, notice by publication may be used in lieu of individual notice where individual notice is infeasible or where the names and addresses of class members are not easily ascertainable. *See* Rubinstein, 3 Newberg on Class Actions § 8.29; *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 317, 70 S. Ct. 652, 658 (1950); *Sweeney v. Alcon Lab'ys*, No. 20-2066, 2021 WL 1546031, at *3 (3d Cir. Apr. 20, 2021); *Shurland v. Bacci Cafe & Pizzeria on Ogden, Inc.*, 271 F.R.D. 139, 145 (N.D. Ill. 2010).

Here, the Court approved the form and contents of both the Summary Notice and the Notice of Proposed Settlement and Fairness Hearing, finding that they satisfied all such Rule 23 and due process considerations. The Settlement Administrator followed the notice procedure

approved by the Court. (Hyte Dec. ¶¶ 3–9.) The results were that 47 notice packets were mailed out (only 5 of which were ultimately undeliverable), 24 claims deemed filed, and no objections or opt-outs received. (Hyte Dec. ¶¶ 5–`3.) The only deviation from the ordered notice procedure was that the English version of the Summary Notice was published in the Union County Local Source on August 5, 2021 instead of the Newark Star Ledger because unbeknownst to Class Counsel the Newark Star Ledger no longer accepts legal notices. (Mermelstein Dec. ¶ 19.) As there were no requests for claim forms based on the publication in either Spanish or English, the three-day delay in publication of the English notice did not prejudice anyone. Therefore, as the notice and claims process as implemented substantially conformed with the process preliminarily approved by the Court, it satisfied both due process and the requirements of Rule 23 and supports final approval of the settlement.

## IV.    THE COURT SHOULD AWARD CLASS COUNSEL'S REQUESTED FEES AND COSTS

Class Counsel seeks an award of fees of 33 1/3% of the total settlement ($333,333.33). The attorneys' fees and costs in this matter are requested as a percentage of the settlement, which is the favored method for calculating attorneys' fees in such cases. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478-79 (1980); *In re AT&T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006); *Prudential*, 148 F.3d at 333 (3d Cir. 1998); Court Awarded Attorney Fees, Report of Third Circuit Task Force, 108 F.R.D. 237 (1985); *Bredbenner*, 2011 WL 1344745 (common fund distribution for attorney's fees in hybrid FLSA/Rule 23 wage and hour case). The percentage-of-recovery method "is the prevailing methodology used by courts in this Circuit for wage-and-hour cases." *Bredbenner*, 2011 WL 1344745, at *19, (citing *Chemi v. Champion Mortg.*, 2009 WL 1470429, at *10 (D.N.J. May 26, 2009)); *In re Janney Montgomery Scott LLC Fin. Consultant*

15

*Litig.*, 2009 WL 2137224, at \*14 (E.D. Pa. July 16, 2009); *Lenahan v. Sears, Roebuck & Co.*, 2006 WL 2085282, at \*19 (D.N.J. July 24, 2006).

Even in cases where statutory attorney's fees attach, such as in FLSA cases, the percentage-of-recovery doctrine is still the preferred manner to calculate attorney's fees. The lodestar method, whereby the attorney's time is multiplied by the reasonable hourly rate, remains disfavored because "regardless [of] how a total settlement structure is formally structured . . . every dollar given to class counsel means one less dollar for the class." *In re Cendant Corp. Litig.*, 264 F.3d 201, 256 (3d Cir. 2001); *see also In re GMC*, 55 F.3d at 821-822 (rejecting lodestar fee and directing that percentage-of-recovery should have been utilized even though the agreement for fees was ostensibly distinct from the agreement to pay class members because of "economic reality" of such arrangement).

In common fund cases, fee awards generally range anywhere from nineteen percent (19%) to forty-five percent (45%) of the settlement fund. *See In re GMC*, 55 F.3d at 822 (citing *In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 533 (E.D. Pa. 1990)). Here, Class Counsel requests a fee of 33 1/3% of the Settlement Payment ($333,333.33). (SA § 3.2.) This percentage is in line with what is routinely provided in such cases. *See*, *e.g.*, *Bredbenner*, 2011 WL 1344745, at \*21 (awarding 32.6% of $3 million, or $978,000, plus costs, in wage and hour case and citing to cases providing same); *In re Safety Components, Inc. Sec. Litig.*, 166 F Supp. 2d 72, 102 (D.N.J. 2001) (granting award of 33 1/3 % in common fund case and citing to ten cases from this Circuit holding the same).

The Third Circuit Court of Appeals has set forth the standards by which to measure and evaluate the reasonableness of proposed counsel fees. *See Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 2000). Those factors include: 1) the size of the fund created and the

number of persons benefitted; 2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; 3) the skill and efficiency of the attorneys involved; 4) the complexity and duration of the litigation; 5) the risk of nonpayment; 6) the amount of time devoted to the case by plaintiffs' counsel; and 7) the awards in similar cases. *See Gunter*, 223 F.3d 190, 195 n.1; *see also In re AT&T Corp.*, 455 F.3d 160, 166 (3d Cir. 2006) (noting that courts should also consider any other factors that are "useful and relevant" under the facts of each case) (citations omitted). "Each case is different, however, and in some circumstances one single factor may outweigh the rest." *Bredbenner*, 2011 WL 1344745, at *19. In addition to these factors, the Third Circuit has suggested that courts "cross-check" their fee calculations against the lodestar award method. *Gunter*, 223 F.3d at 195.

### A.  Size of the Fund and Number of Persons Benefitted

The settlement in the instant matter created a total settlement fund of $1,000,000 for a class of 47. Of those 47, only 24 members made claims. Notably, because of the non-reversionary nature of the settlement, those 24 will still share in the approximately $650,000 that would remain net of the attorney and administrative fees and costs, and any excess payroll taxes owed by Defendants, with no other money reverting to the Defendants. Such a significant fund confers a substantial benefit upon the class. *See Dominguez*, 2017 WL 2495406, at *7. Accordingly, this factor supports the requested fee.

### B.  No Objections to Class Counsel's Fee Request

The notice sent to class members informed them that Class Counsel would seek a fee award of 33 1/3% of the total settlement. (Hyte Dec., Ex. 1, 5.) Not a single objection was raised with respect to Class Counsel's fee request. Hence, this factor weighs in favor of approving the fee application. *See Bredbenner*, 2011 WL 1344745, at *20.

### C.  Skill and Efficiency of Class Counsel

The skill and efficiency of Class Counsel is "measured by 'the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel.'" *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) quoting *In re Computron Software, Inc.*, 6 F. Supp. 2d 313, 323 (D.N.J. 1998).

Class Counsel here efficiently obtained a quality result for the Class. Notwithstanding the different layers of litigation and collection risks involved discussed above and in the shadow of global pandemic, Class Counsel obtained a result where the net Settlement Fund to be distributed to class members (estimated to be $648,666.67) represents nearly 100% of the estimated wages actually owed to them (i.e., not including liquidated damages) under the NJWHL assuming a six-year statute of limitations ($653,283.35). (Mermelstein Dec. ¶ 25.) If the settlement is approved, the Class Members should be receiving their checks less than two-and-a-half years from the filing of the case.

Class Counsel have actively and intensively investigated and prosecuted this case. (Mermelstein Dec. ¶¶ 30–37.) Class Counsel is a highly experienced employment law firm and has substantial experience litigating complex wage and hour collective and class actions. (*Id*. ¶ 29; *see also Lora v. J. V. Car Wash, LTC.*, No. 11 CIV. 9010 LLS AJP, 2015 WL 4496847, at *6 (S.D.N.Y. July 24, 2015), *report and recommendation adopted sub nom. Lora v. J.V. Car Wash, Ltd.*, No. 11CIV9010LLSAJP, 2015 WL 7302755 (S.D.N.Y. Nov. 18, 2015) ("Plaintiffs' counsel [Arenson, Dittmar & Karban] are highly experienced, in general and as employment litigators. Arenson, a graduate of Columbia Law School, has practiced for twenty-eight years. For the past twenty years, his practice has 'focused almost exclusively' on litigating employment cases,

including numerous wage and hour disputes"); *Hilaire v. Underwest Westside Operating Corp.*, No. 19-CV-3169 (PAE) (RWL), 2020 WL 774133 (S.D.N.Y. Feb. 17, 2020); *Sawadogo v. Zap Lube & Car Wash, Inc.*, No. CV 20-1196(SDW)(LDW), 2020 WL 6689826 (D.N.J. Nov. 13, 2020); *Gutierrez v. Tryax Realty Mgmt., Inc.*, No. 17 CIV. 6752 (PAE), 2020 WL 777190 (S.D.N.Y. Feb. 18, 2020); *Sandoval, et al. v. Galaxy General Contracting Corp., et al.*, No. 10-CV-5771 (PGG) (S.D.N.Y.). In addition, opposing counsel here was Victor A. Deutch of Deutch & Associates LLC, an experienced and well-respected litigator who has represented New Jersey businesses for almost fifty years.

Thus, this factor weighs in favor of the proposed fee award.

### D.  Hours Worked and Risk of Non-Payment

In determining the risk of non-payment, courts consider the risk of establishing liability. *In re Cendant Corp.,* 232 F. Supp. 2d at 339. Here, as discussed above, this case poses a number of factual and legal issues, which could have created risks as to liability, damages, and class certification. Accordingly, Class Counsel took substantial risk in litigating this matter. Despite these risks, and as provided by the attached declarations and attorney time logs, as of the date of this filing, Class Counsel dedicated 496.3 hours of attorney time and 15.6 hours of paralegal time on this matter. (Mermelstein Dec. ¶ 36.) Furthermore, Class Counsel incurred $6,823.69 in out-of-pocket litigation expenses. (*Id*. ¶ 38.)

### E.  Awards in Similar Cases

Percentage awards vary between 19%-45% of the fund, and the court should reduce the percentage as the total settlement amount increases when the reason for the increase is not because of efforts taken by counsel, but instead simply because the size of the class has increased. *In re Cendant Corp.*, 243 F.3d at 736; *Bredbenner,* 2011 WL 1344745 at *21; *In re Gen. Motors*, 55 F.3d at 822, citing *In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp.

525, 533 (E.D. Pa. 1990). Smaller percentages are reserved for large settlements, typically $100 million or higher, which may involve hundreds of thousands, if not millions of class members, and where class counsel did not incur substantial additional efforts by the inclusion of such persons. *See In re Cendant Corp.*, 243 F.3d at 736.

Accordingly, the requested award is consistent with awards courts in the Third Circuit routinely approve. *See, e.g., Bredbenner*, 2011 WL 1344745 at *18, 24; *Dominguez*, 2017 WL 2495406, at *8 (approving requested fee award of 37% of common fund); *Rouse v. Comcast Corp.*, No. CIV.A. 14-1115, 2015 WL 1725721, at *12 (E.D. Pa. Apr. 15, 2015) (finding award of 35% of fund reasonable); *In re Safety Components, Inc. Sec. Litig.*, 166 F Supp. 2d at 102 (granting award of 33 1/3 % in common fund case and citing to ten cases from this Circuit holding the same). Accordingly, this factor also weighs in favor of providing the requested fee award.

### F.  Lodestar Cross-Check

Finally, the requested fee is also supported by the lodestar cross-check. The cross-check is performed by calculating the "lodestar multiplier." *In re AT&T Corp.*, 455 F.3d at 164. The lodestar multiplier is determined by dividing the requested fee award, determined from the percentage-of-recovery method, by the lodestar. *Id.* The lodestar multiplier accounts for "the contingent nature or risk involved in a particular case and the quality of the attorneys' work." *See In re Rite Aid Corp. Sec. Litig.,* 396 F.3d 294, 306 (3d Cir. 2005) (citing *Task Force Report*, 108 F.R.D. at 243) (approving a lodestar multiplier of 4.07). The Third Circuit has recognized that multipliers "ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied." *In Re Prudential Ins.*, 148 F.3d at 341. The Court may consider reducing the percentage-of-recovery award when the multiplier is too high (*i.e.* much greater

than 4x). *See In re Rite Aid*, 396 F.3d at 306.  In determining the lodestar for cross-check purposes, the Court need not engage in a "full-blown lodestar inquiry," *In re AT&T Corp. Secs. Litig.*, 455 F.3d 160, 169 n.6 (3d Cir. 2006), or "mathematical precision," *In re Rite Aid Corp.*, 396 F.3d at 306-07. A court need not involve itself with "a review of actual [attorney] time sheets." *Dewey v. Volkswagen of Am.*, 728 F. Supp. 2d 546, 592-93 (D.N.J. 2010). Indeed, where, there have been no objections to the requested fee, "a full-blown lodestar analysis is an unnecessary and inefficient use of judicial resources." *Id*.; *see also Kirsch v. Delta Dental,* 534 Fed. Appx. 113, 117 (3d Cir. 2013). Additionally, while lodestar multipliers are a relevant consideration in determining if the fee request is reasonable, "the lodestar cross-check does not trump the primary reliance on the percentage of common fund method." *In re Rite Aid Corp.,* 396 F.3d at 307.

For the purposes of calculating the lodestar, Class Counsel uses a rate of $700 per hour for the partner, Steven Arenson, who expended 256.2 hours on the case; $400 for the senior associate, Avi Mermelstein, who spent 152.8 hours on the case; and $250 per hour for Tenzing Mingmar, a junior associate, who spent 87.3 hours on the case. (Mermelstein Dec. ¶ 36.) The firm uses a rate of $100 per hour for work done by the paralegal, who spent 15.6 hours on the case. (*Id.*) The resulting lodestar is $263,861. (*Id*.) To calculate the lodestar multiplier, the fees requested as a percentage of the fund ($333,333.33) are divided by the lodestar which yields a multiplier of 1.26.

Accordingly, the fee requested is well within the lodestar cross-check multiplier, as the 1.26 multiplier is well below the permissible and "frequently" awarded multiplier of 4. *See, e.g., In re AT & T Corp.*, 455 F.3d at 169 (affirming District Court's finding that 1.28 multiplier constituted a "truly reasonable fee award"); Memorandum of Law in Support of Plaintiffs'

Motion for Final Approval (ECF Doc. No. 98-2) at 19 and Order Granting Final Approval of Settlement (ECF Doc. No. 102), *Atis v. Freedom Mortg. Corp.*, 15-CV-03424 (D.N.J. June 26, 2019) (approving fee award in FLSA/NJWHL settlement where multiplier was 3.12). The cross-check thus verifies that the requested fee is reasonable for the work performed here.

For these reasons, Plaintiffs respectfully request that the Court grant Class Counsel's fee application.

### G. Approval of Class Counsel's Costs

"There is no reason to reject the request for reimbursement of [expenses] that counsel have spent out of their own pockets in litigating [a class action] case." *In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2008 WL 63269, at *6 (E.D. Pa. Jan. 3, 2008). Moreover, "[t]here is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of ... *reasonable* litigation expenses from that fund." *In re Ikon Off. Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 192 (E.D. Pa. 2000) (cleaned up); *see also In re Royal Dutch/Shell Transp. Sec. Litig.*, No. CIV.A. 04-374 JAP, 2008 WL 9447623, at *29 (D.N.J. Dec. 9, 2008).

Here, Class Counsel incurred $6,823.69 in out-of-pocket costs in litigating this matter. (Mermelstein Dec. ¶ 38.) No class member objected to Class Counsel recouping their costs from the settlement fund, and the notice informed class members that the costs could be as high as $25,000. (Hyte Dec., Ex. 1, 5.) Accordingly, Class Counsel respectfully requests to be awarded such costs.

### V.   THE COURT SHOULD AWARD THE SETTLEMENT ADMINISTRATOR ITS COSTS AND FEES

The Court approved Settlement Services, Inc. ("SSI") as a settlement administrator and

preliminarily approved its costs and fees to be incurred in distributing the settlement. SSI has dutifully complied with its role as the administrator and will fulfill its duties in distributing the final settlement payments. Therefore, Plaintiffs respectfully request that the Court order that SSI shall be paid from the Settlement Fund for its fees and costs in an amount not to exceed the $13,000 estimate for their services which Class Counsel finds reasonable. (Mermelstein Dec. ¶ 39.)

## CONCLUSION

The Settlement Agreement is fair, adequate and reasonable and meets the criteria for approval of class action settlements. For the foregoing reasons, Plaintiffs respectfully ask that the Court: (1) grant final approval of the class and collective action settlement; (ii) grant Class Counsel its requested attorneys' fees of $333,333.33 representing one third of the Settlement Fund; (iii) reimburse Class Counsel for its litigation costs in the amount of $6,823.69; (iv) grant SSI its fees and costs incurred in administering the settlement to be paid from the Settlement Fund; and (v) grant all other relief the Court deems appropriate.

Dated: New York, New York
        December 24, 2021

Respectfully submitted,

ARENSON, DITTMAR & KARBAN

_____/s/_____

Avi Mermelstein
Attorneys for Plaintiffs
200 Park Avenue, Suite 1700
New York, New York 10166
avi@adklawfirm.com
(212) 490-3600